Ruffin. C. J.
 

 It is not necessary to consider the effect of the statute and decree of legitimation, nor whether the defendants could under them be regarded as answering the description of the heirs of Benjamin Whitley, lawfully begotten of his body, supposing them to take as purchasers; because the Court is of opinion, that those are not words of purchase, but of limitation, by force of which, under the act of 1784, Benjamin Whitley the younger, took an estate in fee, and therefore the limitation over, under which the lessors of the plaintiffs claim, is void. Undoubtedly a devise to one for life, remainder to the heirs of his body, is a proper estate tail, according to the rule of law, called the rule in Shelley’s case. It is precisely the same, as a devise to one and the heirs of his body. That is the devise here, except that to the words “ heirs of his body lawfully begotten,” are super-added the words of limitation “ and their heirsand we believe it is perfectly settled, that, unless such super-added words of limitation change the course of descent into another line or channel, they do not operate, so as to convert the first words of limitation into words of purchase. In
 
 Shelley’s case
 
 itself, 1 Rep. 93, there were such superadded words of limitation. It was a recovery suffered by Edward Shelley, a tenant in tail, to the use
 
 *137
 
 of himself for life, remainder to another for 24 years, and then to the use of “ the heirs male of the body of the said Edward lawfully begotten and of the heirs male of the body of such heirs male lawfully begotten,” and then over. He had two sons, of whom the elder was dead, leaving his wife
 
 enceint
 
 of a son; but, before he was born, Edward died and his younger son entered; and the question was, whether the elder brother’s son, when born, had not the better right. It was held, he had, as the heir of the body of his grand father by descent, and not by purchase. There are many other cases to the same effect.
 
 Wright
 
 v.
 
 Pearson, 1
 
 Edm. 119, and stated and commented on by
 
 Mr. Fearne,
 
 Cont. Rem. 128, was a devise to T. R. for life, remainder to trustees to preserve contingent remainders, remainders to the heirs male of the body of T. R. lawfully to be begotten
 
 “
 
 and their heirspro-vided that in case T. R. die without leaving issue male, then over; and it was held T. R. took an estate tail. The terms of that Will are much like those now before us, except that in
 
 Wright
 
 v.
 
 Pearson,
 
 trustees to support contingent remainders were interposed; but that, Lord Keeper Henley said, was a distinction without a difference, and therefore did not rely on that circumstance. In the more modern case of
 
 Measure
 
 v.
 
 Gee,
 
 5 Barn, and Aid.
 
 910,
 
 there was the same circumstance of a remainder to such trustees, and it did not affect the construction of the devise: which was to T. for life, remainder to trustees to support contingent remainders, “ and after the death of T. to the heirs of the body of the said T. his, her, or their heirs and assigns forever; but in case there should be a failure of the issue of T.” then over, upon which it was held, that T. took an estate tail. Besides those, there are the accordant cases of
 
 Goodright
 
 v.
 
 Putlyn, 2
 
 Ld. Raym. 1436, and
 
 Den
 
 v.
 
 Shenton,
 
 Cowp. 410; which are both strong, and particularly the former; where the devise was to A. for life, and after his decease
 
 *138
 
 unto the heirs male of the body of A. and his heirs forever ; but if A. should happen to die without such heir male, then over ; and it was held to be an estate tail in A. and that the words
 
 “ Ms
 
 heirs for default of such
 
 heir
 
 male,” engrafted on “ heirs male of the body of A.” did
 
 not
 
 qualify them so as to prevent the operation of the general rule. It is clear, therefore, that Benjamin, the son, took an estate tail by the words of the devise to him, and, consequently, that the limitation over to Henry was after an indefinite failure of the issue of Benjamin. The effect, then, is, that the fee into which the Act of
 
 1784
 
 turns the estate tail, became absolute in Benjamin, and Henry and his heirs take nothing.
 

 It was argued, however, for the plaintiff, that the subsequent general clause changed the character of the limitation over in that respect, by confining the time to the lives of the children by force of the words “survivors or survivor.” It is difficult
 
 to
 
 understand the clause referred
 
 to
 
 or apply it to any purpose. But, at all events, it seems impossible to say, that it was thereby intended to qualify the previous devises of particular lands to one ehild with a limitation over to another one, by converting* the limitation into one to all the children, or to the “survivors or survivor of the living parties,” to whom any gift was made. That provision must be referred to those dispositions in the will, to which no special limitation over was annexed. But, however that may be, it is clear that lessors of the plaintiff ai’e not within the clause in question; for the “ survivors or survivor” necessarily means some or one of the donees, who were living at the making of the will. The words are, “if either of the
 
 patties
 
 should die without issue, to the survivors or survivor” of
 
 the living parties ;
 
 so as to make the limitation over, under this clause, contingent upon the event of sur-vivorship. Now, Henry Whitley, under whom, as his heirs, the lessors of the plaintiff claim, died before Ben
 
 *139
 
 jamin, and, of course, nothing could vest in him, or descend to his heirs under that clause.
 

 Per Cuhiam. Judgment affirmed.